## THE LIMON.

(District Court, S. D. New York. July 15, 1926.)

Aliens ⬅️58—Vessel whose master discharged alien seamen in American port, after notice to detain them on board, held subject to penalty (Immigration Act 1917, §§ 32, 33 [Comp. St. §§ 4289¼r, 4289¼rr]).

An American vessel, arriving from foreign ports and having in its crew aliens of a class excluded from entry into the United States, whose master, after notice from an immigration officer to detain such aliens on board, paid them off and discharged them, held subject to the penalties imposed by Immigration Act 1917, §§ 32, 33 (Comp. St. §§ 4289¼r, 4289¼rr), though the aliens were signed on at the same port where discharged, and had completed the voyage for which they signed.

In Admiralty. Suit by the United States against the steamship Limon, to recover penalties. Decree for the United States.

Emory R. Buckner, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

W. Dale Williams, of New York City, for claimant.

KNOX, District Judge. Ah Amad and Ah Talib are East Indians, who, coming from a proscribed area, are not entitled to admission to the United States under the provisions of section 3 of the Immigration Act of 1917 (Comp. St. § 4289¼b). These men are seamen, and at some time prior to the events hereinafter recited gained an entry into the country. How or when this occurred does not appear.

On or about April 11, 1923, the aliens were signed on as members of the crew of the American steamship Limon for a voyage from New York to Cuban, Jamaican, and Central American ports and return to New York. That voyage was completed on April 26, 1923, and the men again engaged themselves for a similar trip. When it was over, they once more sailed as members of the crew of the Limon on a voyage from New York to the other ports and return. Upon the arrival of the steamer at New York on July 13, 1923, an immigrant inspector went aboard the vessel. Learning of the presence of the aliens, he directed the master to detain them on board the ship. That officer, presumably believing that the men, having been signed on at this port, were entitled to shore leave, paid their wages and discharged them. The government now claims the action of the master to have been in violation of section 33 of the Immigration Act, and seeks to collect the statutory penalties from the ship.

Section 32 of the act, so far as is material, is to this effect:

"That no alien excluded from admission into the United States by any law, convention, or treaty of the United States regulating the immigration of aliens, and employed on board any vessel arriving in the United States from any foreign port or place, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor providing for the ultimate removal or deportation of such alien from the United States." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r.

Section 33 declares:

"That it shall be unlawful and be deemed a violation of the preceding section to pay off or discharge any alien employed on board any vessel arriving in the United States from any foreign port or place, unless duly admitted pursuant to the laws and treaties of the United States regulating the immigration of aliens: Provided, that in case any such alien intends to reship on board any other vessel bound to any foreign port or place, he shall be allowed to land for the purpose of so reshipping, under such regulations as the Secretary of Labor may prescribe to prevent aliens not admissible under any law, convention, or treaty from remaining permanently in the United States, and may be paid off, discharged, and permitted to remove his effects, anything in such laws or treaties or in this act to the contrary notwithstanding, provided due notice of such proposed action be given by the Master or the seaman himself to the principal immigration officer in charge

at the port of arrival." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼rr.

Claimant of the steamer seeks to justify the action of the master under section 4529 of the Revised Statutes (Comp. St. § 8320), which, after providing the manner in which seamen on vessels making coasting voyages shall be paid, state that:

"Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seamen a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court."

The answer to this is, as suggested by the assistant United States attorney who argued the case, that there was here "sufficient cause" to withhold the seamen's pay until they had complied with departmental regulations with respect to reshipment, or until the seamen were delivered into the custody of the immigration officials. Under the Immigration Act, these men were absolutely barred from entry into the United States, unless it was their intention to reship, and unless suffering from disability entitling them to hospital treatment, and in such cases their landing would be subject to regulations promulgated by the Department of Labor. Being barred, the aliens were subject to section 33, even though they were seamen on board an American vessel.

It is further urged that Ah Amad and Ah Talib come within the authority of the decision of the Circuit Court of Appeals for the Fourth Circuit, in the case of United States ex rel. Lum Young v. Stump, 292 F. 354. Admittedly there is language in the opinion of a majority of the court that would indicate this to be the fact. Nevertheless, the court was then dealing with a Chinese seaman, and the gravamen of the ruling was that he was not a "laborer," within the meaning of the Chinese Exclusion Acts. And, anyway, I rather incline to the construction of the law there involved, as expressed in the dissenting opinion of Judge Woods.

There is much to be said in condemnation of the practice of making a ship the place of detention of excluded alien seamen, who do not expect to reship on board such vessel. That matter, however, is not determinative of the question before me. The fact is that the Limon was not long used as a place of detention. The master, without notice to the immigration officials, quickly discharged the men he was ordered to detain. By so doing the ship was rendered liable to the penalty provided by statute, and the government may have a decree for $2,000.